# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Rodney Marshall,

     Petitioner

v.

Brian Williams, et al.,

     Respondents

Case No.: 2:18-cv-00075-JAD-DJA

**Order Denying Petition for
Habeas Relief and
Closing Case**

Petitioner Rodney Marshall was found guilty of four counts of robbery and two counts of battery with intent to commit a crime in Nevada State Court and sentenced to ten years to life in prison for each count.[1]  In a four-count petition, Marshall seeks a writ of habeas corpus under 28 U.S.C. § 2254 based on claims that the state district court failed to sever the counts, his right to be free from double jeopardy was violated, there was insufficient evidence to support two of his convictions, and his trial counsel failed to object to a detective's testimony.[2]  Having evaluated the merits of those claims, I find that habeas relief is not warranted, so I deny Marshall's petition, deny him a certificate of appealability, and close this case.

## Background

### A.    The facts underlying Marshall's convictions[3]

Daniel Montes was "in the area of Tropicana and Maryland Parkway" on April 23, 2006, around 5:00 p.m. when he first met Marshall.  Marshall invited Montes to have a beer at Marshall's residence across the street, and after the two shared a few beers, Montes left.  As Montes was urinating outside of Marshall's apartment building, Marshall hit Montes with an object, knocking him out, and stole his necklace and money.  Montes needed surgery following

---

[1] ECF No. 12-5.

[2] ECF No. 11.

[3] These facts are taken from the trial transcripts.  ECF Nos.14-30, 14-31, 14-33.  For simplicity's sake, I cite to these exhibits generally for this entire fact section.

the attack; he had a metal plate placed in his chin and his mouth wired shut.  Montes identified

Marshall as his attacker from a single photograph shown to him at the grand jury proceeding.

Montes also identified Marshall at trial.

Charles Proudman lived near Marshall and would see him walking "three, four times a

week" during a three-month period.  Proudman knew Marshall's first name and invited him

inside his apartment to share a beer on several occasions.  On July 2, 2006, Marshall approached

Proudman and asked for money.  Proudman told Marshall that he did not have any money but

that he was going to borrow some later that day.  Between 8:00 p.m. and 10:00 p.m. that evening,

Proudman returned home from gambling and drinking and found Marshall inside his apartment.

Marshall hit Proudman, knocking him out, and stole $60.00 from Proudman's wallet before

leaving.  Proudman had facial reconstructive surgery and a metal plate placed on the left side of

his face as a result of the attack.  Proudman was shown a set of photographs by law enforcement

three years after the attack and identified Marshall as his attacker.  Proudman also identified

Marshall at the trial.

Benjamin Livermore cashed a check at a supermarket on October 16, 2006.  Livermore

then visited a smoke shop around the corner to buy cigarettes, and as he was walking to rent a

short-term apartment nearby, he was approached by "a couple guys," including Marshall.

Livermore was then "hit in the back of the head by some blunt object," which required "12

staples in [his] head."  When he regained consciousness, Livermore realized that his wallet was

missing, and after law enforcement returned it to him, he discovered that $600.00 to $800.00 was

stolen.  Livermore identified Marshall three years later in a photographic lineup.  Livermore also

identified Marshall at trial, indicating that he knew Marshall "[f]rom the neighborhood."

Kendall Featherstone got off work around 1:00 a.m. on January 16, 2007, and after

gambling and stopping by a 7-Eleven convenience store, he parked his car at his apartment

complex.  As Featherstone was walking to his apartment, "all of a sudden there was a person

standing next to [him] walking along."  The person told Featherstone to "give [him] what [he's]

got."  Featherstone replied that he was "not giving [him] shit," and the person then "slugged

[Featherstone] so hard in the face."  Featherstone "was hit right on [his] left jaw just above [his]

tooth line." Featherstone was unconscious for "maybe a good half an hour," and when he regained consciousness, he realized his wallet and the groceries and beer he was carrying were gone. The person who assaulted Featherstone was wearing a hoodie and his "face was pretty shadowed," so Featherstone did not have a good opportunity to see his face. Featherstone was shown a photographic lineup several years later, but he was unable to identify his attacker.

Curtis Euart, who had been drinking, dropped his wife off at work and was walking towards the intersection of Palos Verdes Street and East Twain Avenue on January 26, 2008, around 3:30 p.m., when he was approached by three people. One of those people asked Euart if he "want[ed] to party." Euart declined, and after some friendly small talk, the person "walked [him] off the sidewalk," tripped him, hit him a few times, grabbed his money, and left. Euart needed surgery following the assault; he had a plate put in his jaw and his mouth wired shut. Euart initially lied to medical personnel about how his injuries occurred, and Euart failed to initially report the attack to law enforcement. Euart was shown a photographic lineup about a month after the attack, and he identified Marshall and stated "[t]hat's my 90 percent thought that was the guy that assaulted me." However, Euart testified at trial that Marshall was not the person who robbed him. In fact, Euart testified that he told the State that he saw the person who had robbed him on the bus two years after the robbery. That person "was trying to get away from [Euart], and . . . he just looked guilty." Euart testified that the State did not "seem . . . too interested in" the fact that Euart saw this person on the bus.

**B.    Procedural history**

Marshall was charged with five counts of robbery and five counts of battery with intent to commit a crime.[4] Following a jury trial, Marshall was found guilty of four counts of robbery and four counts of battery with intent to commit a crime.[5] The state district court declared Marshall a habitual criminal and sentenced him to ten years to life in prison for each of his eight

---

[4] ECF No. 14-8.

[5] ECF No. 14-36. The jury found Marshall not guilty of battery and robbery regarding Featherstone.

convictions.[6]  Marshall appealed, and the Nevada Supreme Court affirmed on August 1, 2012.[7]

Marshall filed a petition for a writ of certiorari on December 13, 2012.[8]  The United States

Supreme Court denied the writ on February 25, 2013.[9]  The Nevada Supreme Court issued its

remittitur on May 14, 2013.[10]

Marshall filed his pro se state habeas petition on March 21, 2014.[11]  Following an

evidentiary hearing, the state district court granted, in part,[12] and denied, in part, Marshall's

petition on July 12, 2016.[13]  Marshall appealed, and the Nevada Supreme Court affirmed on July

11, 2017.[14]  Remittitur issued on August 7, 2017.[15]

Marshall filed his federal habeas petition and his counseled first amended petition on

January 22, 2018, and August 3, 2018, respectively.[16]  The respondents moved to dismiss the

amended petition on October 2, 2018.[17]  I denied the motion on August 16, 2019.[18]  The

---

[6] ECF No. 15-9.

[7] ECF No. 12-4.

[8] ECF No. 15-31.

[9] ECF No. 15-32.

[10] ECF No. 15-33.

[11] ECF No. 15-34.

[12] The state district court dismissed two counts of battery with intent to commit a crime and "vacate[d] the sentence as to those counts."  ECF No. 12-6 at 7.  An amended judgment of conviction was entered reflecting the dismissal.  *See* ECF No. 12-5.

[13] ECF Nos. 16-19, 12-6.

[14] ECF No. 12-9.

[15] ECF No. 16-34.

[16] ECF Nos. 5, 11.

[17] ECF No. 13.

[18] ECF No. 28.

respondents answered the amended petition on October 15, 2019, and Marshall replied on January 13, 2020.[19]

Marshall alleges the following violations of his federal constitutional rights:

1.   His rights to due process and a fair trial were violated when the state district court failed to sever the individual counts;

2.   His right to be free from double jeopardy was violated when he was convicted and sentenced for both robbery and battery with intent to commit robbery;

3.   His right to due process was violated when he was convicted on insufficient evidence for the robbery and battery of Euart;

4.   His right to the effective assistance of counsel was violated when his trial counsel failed to object to a detective's summary of the investigation.[20]

**Discussion**

**A.   Legal standards**

**1.   *Review under the Antiterrorism and Effective Death Penalty Act (AEDPA)***

If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[21]   A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[22]   And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the

---

[19] ECF Nos. 30, 33.

[20] ECF No. 11.

[21] 28 U.S.C. § 2254(d).

[22] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

facts at hand.[23]  Section 2254 does not, however, "require state courts to *extend*" Supreme Court precedent "to a new context where it should apply" or "license federal courts to treat the failure to do so as error."[24]  The "objectively unreasonable" standard is difficult to satisfy;[25] "even 'clear error' will not suffice."[26]

Habeas relief may only be granted if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[27] As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[28]  "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[29]  AEDPA "thus imposes a 'highly deferential standard for evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[30]

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[31]  The petitioner bears the burden of proving

---

[23] *White v. Woodall*, 134 S. Ct. 1697, 1705–07 (2014).

[24] *Id.* at 1705–06.

[25] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[26] *Wood v. McDonald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

[27] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[28] *Id.* at 103.

[29] *Id.* at 101.

[30] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

[31] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

by a preponderance of the evidence that he is entitled to habeas relief,[32] but state-court factual

findings are presumed correct unless rebutted by clear and convincing evidence.[33]

### 2.     Standard for federal habeas review of an ineffective-assistance claim

The right to counsel embodied in the Sixth Amendment provides "the right to the

effective assistance of counsel."[34]  Counsel can "deprive a defendant of the right to effective

assistance[] simply by failing to render 'adequate legal assistance[.]'"[35]  In the hallmark case of

*Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance

claim requires a petitioner to show that: (1) his counsel's representation fell below an objective

standard of reasonableness under prevailing professional norms in light of all of the

circumstances of the particular case;[36] and (2) it is reasonably probable that, but for counsel's

errors, the result of the proceeding would have been different.[37]

A reasonable probability is "probability sufficient to undermine confidence in the

outcome."[38]  Any review of the attorney's performance must be "highly deferential" and must

adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting

effects of hindsight.[39]  "The question is whether an attorney's representation amounted to

incompetence under prevailing professional norms, not whether it deviated from best practice or

---

[32] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[33] 28 U.S.C. § 2254(e)(1).

[34] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[35] *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

[36] *Strickland*, 466 U.S. at 690.

[37] *Id.* at 694.

[38] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).

[39] *Strickland*, 466 U.S. at 689.

most common custom."[40]  The burden is on the petitioner to overcome the presumption that counsel made sound trial-strategy decisions.[41]

The United States Supreme Court has described federal review of a state supreme court's decision on an ineffective-assistance claim as "doubly deferential."[42]  So, the court must "take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d)'"[43] and consider only the record that was before the state court that adjudicated the claim on its merits.[44]

**B.    Evaluating Marshall's claims**

Marshall claims that the state district court failed to sever the charges, his right to be free from double jeopardy was violated, there was insufficient evidence to support two of his convictions, and his trial counsel failed to object to the detective's testimony.[45]

*1.    Ground 1—failure to sever the individual counts*

In Ground 1, Marshall alleges that his federal constitutional rights were violated when the state district court failed to sever the individual counts.[46]  Marshall elaborates that there were insufficient similarities between the five robberies to show a common scheme or plan and evidence of the other robberies would not have been admissible in separate trials.[47]  Marshall argues that combining the stronger cases, in which he was identified as the robber, with the weaker cases, in which he was not, was unduly prejudicial.[48]  In affirming Marshall's judgment

---

[40] *Harrington*, 562 U.S. at 104.

[41] *Id.*

[42] *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

[43] *Id.*

[44] *Id.* at 181–84.

[45] ECF No. 11.

[46] ECF No. 11 at 13.

[47] *Id.* at 14.

[48] *Id.* at 16.

of conviction on direct appeal, the Nevada Supreme Court held that joinder was proper and was

not unfairly prejudicial:

> Marshall argues that his constitutional rights to due process and a fair trial were
> violated because the district court denied his motion to sever. Marshall contends
> that joinder was not proper under NRS 173.115, as the generalized similarities
> offered by the State are not sufficient to establish a common scheme or plan.
> Marshall also contends that joinder was not proper because the evidence would not
> have been cross-admissible at separate trials and that joinder of the counts was
> unfairly prejudicial.

> NRS 173.115(2) allows joinder when the offenses are "[b]ased on two or more acts
> or transactions connected together or constituting parts of a common scheme or
> plan." While we disagree with the district court that these incidences "constitute[ed]
> parts of a common scheme or plan," these incidents were properly joined because
> they were "connected together." NRS 173.115(2); *see Fields v. State*, 125 Nev. 776,
> 782, 220 P.3d 724, 728 (2009) (laying out the considerations for overcoming the
> presumption of inadmissibility that attaches to all prior bad act evidence); *Hotel
> Riviera, Inc. v. Torres*, 97 Nev. 399, 403, 632 P.2d 1155, 1158 (1981) (affirming
> the district court's decision on alternate grounds). Marshall was identified at the
> scenes, lived in the area during the period, and the numerous robberies and batteries
> were similar in nature. The evidence that all five robberies occurred after serious
> blows to the head could have been admissible to prove motive or intent to deprive
> the victims of personal property by force. *See* NRS 48.045(2). Thus, we conclude
> that this evidence is sufficient to show that the incidents and evidence related to
> each one were connected together.

> However, even if joinder was permissible under NRS 173.115, the district court
> should have severed the offenses if the joinder was unfairly prejudicial. *Tabish v.
> State*, 119 Nev. 293, 304-05, 72 P.3d 584, 591 (2003). To assess the potential
> prejudice caused by joinder, the test is whether the prejudice manifestly outweighs
> the central concern of judicial economy. *Id.* at 304, 72 P.3d at 591. Here, the
> district court's jury instruction adequately addressed the issue of any potential prejudice by
> limiting the jury's consideration of the evidence. *See id.* Marshall's acquittal on the
> counts involving one of the victims also demonstrates the jury's lack of prejudice
> in each conviction by showing the ability of the jury to compartmentalize the
> evidence to each separate crime. We therefore conclude that joinder was proper and
> was not unfairly prejudicial, because any prejudice was outweighed by the concern
> for judicial economy.[49]

---

[49] ECF No. 12-4 at 3–4.

I find that the Nevada Supreme Court's rejection of Marshall's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts. Marshall moved "to sever the separate and non-related offenses . . . into separate complaints as joinder is not proper."[50]  His motion was based, in part, on Nevada Revised Statute (NRS) § 173.115(1), which provides that "[t]wo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged . . . are" either "[b]ased on the same act or transaction; or . . . [b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan."  A hearing was held on Marshall's motion.[51]  Following the hearing, the state district court denied the motion, explaining, "[b]ased upon the information provided, the similarities of the events that have been outlined, I believe there's sufficient nexus and common scheme to allow the counts to remain joined."[52]

The district court "may grant habeas relief on a joinder challenge only if the joinder resulted in an unfair trial.  There is no prejudicial constitutional violation unless simultaneous trial of more than one offense . . . actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process."[53]  As to prejudice, the court must ask "'if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict.'"[54] The Ninth Circuit explained that it "focuses particularly on cross-admissibility of evidence and

---

[50] ECF No. 14-11 at 2.

[51] *See* ECF No. 14-19.

[52] *Id.* at 11.

[53] *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (internal quotation marks omitted) (quoting *Sandoval v. Calderon*, 241 F.3d 765, 771–72 (9th Cir. 2001)); *see also Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998) ("[M]isjoinder must have 'result[ed] in prejudice so great as to deny [Petitioner] his Fifth Amendment right to a fair trial' in order for us to find that [Petitioner] suffered a constitutional violation."); *United States v. Lane*, 474 US 438, 466 n.8 (1986) ("Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial.").

[54] *Davis*, 384 F.3d at 638 (quoting *Sandoval*, 241 F.3d at 772).

the danger of 'spillover' from one charge to another, especially where one charge or set of charges is weaker than another."[55]   Reversal of a conviction is not warranted if "the evidence was so strong that any due process violation in the joinder had no 'substantial and injurious effect or influence in determining the jury's verdict' with regard to that offense."[56]   It is the petitioner's "burden to prove unfairness rising to the level of a due process concern."[57]

Based upon my review of the record, I cannot determine that the joinder of the five robberies rendered Marshall's trial fundamentally unfair.[58]   It is true, as Marshall notes, that the five robberies had some differences: one of the robberies occurred a fair distance from the other four, the robberies took place over a large span of two years, the site and times of the robberies varied, the use of a weapon and an accomplice during the robberies varied, and the victims had varying levels of knowledge about the robbery suspect.   But it also appears that, under Nevada law, the evidence from the incidents would be cross-admissible based on a common opportunity.[59]   All of the robberies had the same operative set of facts: the victim was alone in a high-crime area of Las Vegas, was violently hit in the head, causing substantially injuries, and had his cash stolen.   Moreover, as was the case here,[60] prejudice can be "limited through an instruction directing the jury to consider each count separately."[61]   Finally, because Marshall was

[55] *Id.*; *see also Sandoval*, 241 F.3d at 772 ("[R]ecogniz[ing] that the risk of undue prejudice is particularly great whenever joinder of counts allows evidence of other crimes to be introduced in a trial where the evidence would otherwise be inadmissible.").

[56] *Bean*, 163 F.3d at 1086 (citing *Brecht v. Abramson*, 507 U.S. 619, 637 (1993)).

[57] *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

[58] *Davis*, 384 F.3d at 638.

[59] *See Sandoval*, 241 F.3d at 772 ("[C]ross-admissibility dispels the prejudicial impact of joining all counts in the same trial."); *see also* Nev. Rev. Stat. § 48.045(2) ("Evidence of other crimes, wrongs or acts . . . may . . . be admissible . . . as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.").

[60] *See* ECF No. 14-35 at 12 (instructing the jury that "[a]lthough each charge, and the evidence pertaining to it, should be evaluated separately, you may consider evidence from one incident in a separately charged incident only for the limited purpose of proving motive, opportunity, intent, preparation, identity, absence of mistake or accident, or a common scheme or plan of the defendant").

[61] *Davis*, 384 F.3d at 639 (citing *Lane*, 474 U.S. at 450 n.13).

acquitted of the charges relating to Featherstone,[62] it cannot be concluded that the joinder "had a substantial and injurious effect or influence in determining the jury's verdict."[63]  Indeed, the Ninth Circuit has explained that acquittal on one joined charge establishes that the jury successfully compartmentalized the evidence.[64]  Accordingly, because the Nevada Supreme Court reasonably denied Marshall relief on this claim, Marshall is not entitled to federal habeas relief on Ground 1.[65]

### 2.  *Ground 2—double jeopardy*

In Ground 2, Marshall alleges that his federal constitutional right to be free from double jeopardy was violated when he was convicted and sentenced to both robbery and battery with the intent to commit robbery.[66]  Marshall elaborates that the force used to accomplish the robbery was the same force used to accomplish the battery, and since the battery was specifically charged as being with intent to commit robbery, the intent element was also the same.[67]  In affirming Marshall's judgment of conviction on direct appeal, the Nevada Supreme Court found no plain error and that that the separate punishments for the robbery and battery offenses did not violate the Double Jeopardy Clause:

> Marshall argues that robbery and battery with intent to commit a crime are the same offense under *Blockburger v. United States*, 284 U.S. 299 (1932), and therefore his constitutional right against being punished twice for the same crime was violated when the district court sentenced him for both offenses. Marshall requests that this court overrule the holding in *Zgombic v. State*, 106 Nev. 571, 578, 798 P.2d 548,

---

[62] *See* ECF Nos. 14-36 at 4; 14-8 at 3–4.

[63] *Davis*, 384 F.3d at 638.

[64] *See Featherstone v. Estelle*, 948 F.2d 1497, 1503–04 (9th Cir. 1991) ("[I]t is apparent from the jury's discerning verdict that it followed the court's instructions to regard each count as separate and distinct."); *see, e.g., United States v. Unruh*, 855 F.2d 1363, 1374 (9th Cir. 1987) ("The best evidence of the jury's ability to compartmentalize the evidence is its failure to convict all defendants on all counts.").

[65] I would reach the same conclusion even reviewing this claim *de novo*. *See* ECF No. 33 at 12–13 (request by Marshall that I "conduct an independent review of the record").

[66] ECF No. 11 at 17.

[67] *Id.* at 18.

552 (1990), *superseded by statute on other grounds as stated in Steese v. State*, 114 Nev. 479, 499 n.6, 960 P.2d 321, 324 n.6 (1998), that convictions for robbery and battery are two separate offenses. While Marshall failed to object during the proceedings below, "this court has the discretion to review constitutional or plain error." *Somee v. State*, 124 Nev. 434, 443, 187 P.3d 152, 159 (2008).

*Blockburger* controls the determination of whether offenses are the same for purposes of the Double Jeopardy Clause and necessitates that, in order for crimes to constitute separate offenses, each must require proof of fact that the other does not. 284 U.S. at 304. We have previously determined in *Zgombic* that battery and robbery do not implicate the Double Jeopardy Clause. 106 Nev. at 578, 798 P.2d at 552. We determined that while battery requires the use of force or violence, robbery does not. NRS 200.380(1); NRS 200.481(1)(a); *Zgombic*, 106 Nev. at 578, 798 P.2d at 552. Moreover, robbery requires the taking of property, which battery does not. NRS 200.380(1); *Zgombic*, 106 Nev. at 578, 798 P.2d at 552. The crimes of robbery and battery were created by the legislature to punish separate wrongs. The battery with intent to commit robbery and the robbery statutes regulate distinct aberrant social conduct and protect separate societal interests. Therefore, we decline to find plain error and affirm the district court ruling that the separate punishments for robbery and for battery with intent to commit a robbery do not violate the Double Jeopardy Clause.[68]

I find that the Nevada Supreme Court's rejection of Marshall's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts. The Fifth Amendment's Double Jeopardy Clause prohibits multiple punishments for the same offense.[69]  The Double Jeopardy Clause provides three related protections: (1) it prohibits a second prosecution for the same offense after acquittal; (2) it prohibits a second prosecution for the same offense after conviction; and (3) it prohibits multiple punishments for the same offense.[70]  "[T]he final component of double jeopardy—protection against cumulative punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature."[71]  And "[b]ecause the substantive power to prescribe

---

[68] ECF No. 12-4 at 5–6.

[69] U.S. Const. amend. V.

[70] *United States v. Wilson*, 420 U.S. 332, 343 (1975).

[71] *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).

crimes and determine punishments is vested with the legislature, . . . the question under the Double Jeopardy Clause whether punishments are multiple is essentially one of legislative intent."[72]  Therefore, "if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end."[73]

The "same-elements" test established in *Blockburger v. United States*[74] is used to determine whether multiple prosecutions or multiple punishments involve the same offense.[75] The test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution."[76]  "Conversely, '[d]ouble jeopardy is not implicated so long as each violation requires proof of an element which the other does not.'"[77]  "'If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.'"[78]  The "same act or transaction" can "constitute[ ] a violation of two distinct statutory provisions."[79]

Marshall was convicted of robbery and battery with the intent to commit a crime as to Livermore and Euart.[80]  At the time of Marshall's trial, NRS § 200.380 defined robbery as "the unlawful taking of personal property from the person of another, or in his presence, against his

---

[72] *Id*. (internal quotation marks omitted).

[73] *Id.* at n.8; *see also Whalen v. United States*, 445 U.S. 684, 691–92 (1980) ("[W]here two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent.").

[74] *Blockburger v. United States*, 284 U.S. 299 (1932).

[75] *United States v. Dixon*, 509 U.S. 688, 696 (1993).

[76] *Id.*; *see also Ball v. United States*, 470 U.S. 856, 861 (1985) ("The assumption underlying the *Blockburger* rule is that Congress ordinarily does not intend to punish the same offense under two different statutes.").

[77] *Wilson v. Belleque*, 554 F.3d 816, 829 (9th Cir. 2009) (quoting *United States v. Vargas-Castillo*, 329 F.3d 715, 720 (9th Cir. 2003).

[78] *Id.* (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)).

[79] *Blockburger*, 284 U.S. at 304.

[80] *See* ECF Nos. 14-8 at 3–4; 12-5.

will, by means of force or violence or fear of injury, immediate or future, to his person or property."  And NRS § 200.400(2) allowed for the sentencing of "[a] person who is convicted of battery with the intent to commit mayhem, robbery or grand larceny."  As it is used in that statute, battery is defined as "any willful and unlawful use of force or violence upon the person of another."[81]

Here the Nevada Supreme Court relied on the correct federal-law standards and applied them reasonably to the facts of Marshall's case.  As the Nevada Supreme Court reasonably determined, battery with the intent to commit robbery—but not robbery—requires the use of force or violence,[82] and robbery—but not battery with the intent to commit robbery—requires the taking of property.[83]  And as the Nevada Supreme Court appears to have reasonably determined, these two crimes were created by the Nevada Legislature to punish separate actions.[84]  Indeed, robbery punishes the taking while battery with the intent to commit robbery punishes the force used to accomplish the taking.  Accordingly, the Nevada Supreme Court reasonably concluded that Marshall's convictions do not violate the *Blockburger* "same-elements" test.[85]  Marshall is denied federal habeas relief for Ground 2.

---

[81] Nev. Rev. Stat. § 200.400(1)(a).

[82] I note that, under Nevada law, robbery does not have to be committed with force; it can also be committed by mere "fear of injury, immediate or future."  Nev. Rev. Stat. § 200.380(1).  So the crime of robbery can be satisfied by one of two alternative means—either by force/violence or "fear of injury"—and one of those alternative means—force/violence—makes it seemingly identical to the crime of battery with intent to commit robbery.  However, because there is no clearly established United States Supreme Court precedent addressing whether a double-jeopardy violation exists when an offense can be committed multiple ways—and only one of those ways has the same elements as another offense—I do not find that Marshall has shown that he is entitled to relief.

[83] *See* Nev. Rev. Stat. §§ 200.380, 200.400.

[84] *See Brown v. Ohio*, 432 U.S. 161, 167 (1977) ("We are mindful that the Ohio courts 'have the final authority to interpret . . . that State's legislation.'"); *see also Johnson*, 467 U.S. at 499 ("We accept, as we must, the Ohio Supreme Court's determination that the Ohio Legislature did not intend cumulative punishment for the two pairs of crimes involved here.").

[85] *See* 284 U.S. at 304.

### 3. *Ground 3—insufficient evidence for the Euart incident*

In Ground 3, Marshall alleges that his federal constitutional rights were violated because there was insufficient evidence to convict him of robbery and battery regarding Euart because Euart testified that Marshall was not the man who robbed him.[86]  In affirming Marshall's judgment of conviction on direct appeal, the Nevada Supreme Court found sufficient evidence:

> We conclude that substantial evidence supports Marshall's jury conviction for crimes involving Euart. *See Moore v. State*, 122 Nev. 27, 35, 126 P.3d 508, 513 (2006) (this court will not reverse a verdict that is supported by substantial evidence). In addition to Euart's prior identification of Marshall, the State also presented evidence that the attack occurred in the same area and that the injuries sustained were similar to those sustained by the other four victims. Euart's attacker told him he lived off Tropicana Avenue, where Marshall resided, and police placed Marshall less than a mile from the attack site that day. While Euart later recanted his identification of Marshall, it is the task of the jury to determine the credibility of Euart's testimony, and the jury could have permissibly based the conviction on circumstantial evidence. *See Buchanan v. State*, 119 Nev. 201, 217, 69 P.3d 694, 705 (2003).
>
> . . . Therefore, there was sufficient evidence to support the convictions for the charges involving . . . Euart . . . .[87]

I find this ruling reasonable.  "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."[88]  A federal habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."[89]  On direct review of a sufficiency-of-the-evidence claim, a state court must determine whether "any rational trier of fact could have found the essential elements of the crime

---

[86] ECF No. 11 at 19.

[87] ECF No. 12-4 at 6–7.

[88] *In re Winship*, 397 U.S. 358, 364 (1970).

[89] *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

beyond a reasonable doubt."[90]  The evidence must be viewed "in the light most favorable to the prosecution."[91]  Federal habeas relief is available only if the state-court determination that the evidence was sufficient to support a conviction was an "objectively unreasonable" application of *Jackson*.[92]

It is true, as Marshall notes, that the facts of Euart's attack differ slightly from the other four robberies.  Euart testified that, contrary to his identification during the photographic lineup, Marshall was not his attacker.[93]  And Detective Buddy Embrey testified that Euart was robbed "kind of out of the area" of the other robberies.[94]  In fact, the other four robberies were "all within a quarter of a mile" of each other, but Euart's robbery was a mile and a half away.[95]  However, the evidence also demonstrated that Euart had been drinking at the time of the attack, lied to medical personnel about how his injuries occurred, and failed to initially report the attack to law enforcement.  This evidence could have affected Euart's credibility with the jury regarding his recantation.[96]  Further, Euart was hit in the same area of his head as the other victims, had injuries markedly similar to the other victims, and identified Marshall with ninety percent surety a month after the attack.  As the Nevada Supreme Court reasonably determined, the jury could have reasonably convicted Marshall of the robbery and battery of Euart on this circumstantial evidence.[97]  Thus, because a rational trier of fact could have found beyond a reasonable doubt that Marshall robbed and battered Euart, the Nevada Supreme Court's ruling

---

[90] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[91] *See id*.

[92] *See Juan H.*, 408 F.3d at 1275 n.13.

[93] *See* ECF No. 14-33 at 45–46.

[94] *Id.* at 110.

[95] *Id.* at 111–12.

[96] *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review.").

[97] *See Buchanan v. State*, 119 Nev. 201, 217, 69 P.3d 694, 705 (2003) ("Circumstantial evidence alone can certainly sustain a criminal conviction.").

that there was sufficient evidence to convict Marshall of the robbery and battery of Euart was

reasonable.[98]   Marshall is denied federal habeas relief for Ground 3.

### 5.      *Ground 4—failure to object to the detective's summary of the investigation*

In Ground 4, Marshall alleges that his federal constitutional rights were violated because

his trial counsel failed to object to Detective Embrey's summary of the investigation, which

Marshall argues was cumulative and prejudicial.[99]   Marshall elaborates that Detective Embrey's

testimony was essentially a precursor to the State's closing argument with the added benefit of

Detective Embrey's opinion that Marshall committed all the robberies.[100]   In affirming the state

district court's denial of Marshall's state habeas petition, the Nevada Supreme Court held any

challenge would have been futile:

> Marshall argues that trial and appellate counsel should have contested the admission of a detective's "exciting" testimony regarding the course of the investigation. The district court found that the detective's testimony served to identify the offenses, the apparent motivation common to them that officers perceived, and the reasons by the investigation took years to develop and identify a suspect whose appearance changed over time. The detective's testimony regarding the course of the investigation was permissible, as it offered to rebut the defense theory of the case that the police investigation had failed to establish that the five robberies committed over a period of three years had all been committed by the same individual. *See United States v. Holmes*, 620 F.3d 836, 841 (8th Cir. 2010) (explaining that out-of-court statements are not hearsay when offered to illustrate the propriety of the police's investigation); *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004) ("If a jury would not otherwise understand why an investigation targeted a particular defendant, the testimony could dispel an accusation that the officers were officious intermeddlers staking out [appellant] for nefarious purposes."); *United States v. Hawkins*, 905 F.2d 1489, 1495 (11th Cir. 1990) (concluding that investigator's testimony was admissible to explain why the investigation commenced and to rebut defense claims that the investigation was baseless and sought to harass the target). Marshall's reliance on *Abram v. State*, is misplaced because that case involved an officer's "highly prejudicial" testimony regarding inadmissible character evidence that was not relevant to the State's theory of the case, 95 Nev. 352, 354, 594 P.2d 1143, 1144-45 (1979), while here the

[98] *In re Winship*, 397 U.S. at 364; *Juan H.*, 408 F.3d at 1274; *Jackson*, 443 U.S. at 319; Nev. Rev. Stat. §§ 200.380, 200.400.

[99] ECF No. 11 at 21–22.

[100] *Id.* at 22.

testimony was relevant to the State's theory that Marshall had committed the offenses over a prolonged period of time and to rebut the defense theory of the case. Marshall's reliance on *United States v. Reyes*, 18 F.3d 65, 69 (2d Cir. 1994), is similarly misplaced, as the detective here did not testify as to the substance of a declarant's out-of-court statements and his testimony regarding Marshall's own statements in jail calls was not hearsay pursuant to NRS 51.035(3)(a). For these reasons, trial and appellate challenges to the detective's testimony would have been futile, and counsel accordingly were not deficient on this basis. This district court therefore did not err in denying this claim.[101]

I find that the Nevada Supreme Court's rejection of Marshall's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

Detective Embrey testified that in the beginning of 2009 he was "looking [at] certain types of crimes" that occurred in the "Tropicana and Maryland Parkway" area involving "a black male striking [his] victim[s] on the left side of [their] face."[102]  During that investigation, Detective Embrey "had an opportunity to review incident reports that were created for all" the robberies and identified Marshall as a suspect.[103]  As soon as the State questioned Detective Embrey about the facts of the attack on the first victim, Montes, Marshall's trial counsel objected "to summarizing the testimony at this point."[104]  Marshall's trial counsel asked to approach, and an off-record bench conference was held.[105]  The State then informed Detective Embrey that "we're not just going to summarize everything that happened," but, instead, the State "want[ed] Detective Embrey] to talk about . . . just the specific factors that caught [his] attention in [his] investigation."[106]  Detective Embrey then testified about each of the victim's injuries, the

---

[101] ECF No. 12-9 at 6–7.

[102] ECF No. 14-33 at 101.

[103] *Id.* at 102–103.

[104] *Id.* at 104.

[105] *Id.*

[106] *Id.*

location of each of the attacks, and whether the descriptions given by the victims matched Marshall's description.[107]

It is true, as Marshall points out, that Nevada law dictates that a detective's irrelevant comments should be excluded "[a]bsent some substantial connection between the detective's comments and the state's theory of the case."[108]  However, as the Nevada Supreme Court reasonably determined, Embrey's testimony was relevant and was appropriately connected to the State's theory of the case that Marshall committed all the robberies.  Indeed, his testimony relevantly described the facts of the attacks as it pertained to his investigation without simply rehashing the evidence already discussed at trial.[109]  Moreover, Marshall's trial counsel did object to Detective Embrey summarizing the evidence and, following a bench conference, the State attempted to restrict Detective Embrey's testimony, instructing him to speak only about specific factors in his investigation.  Therefore, because Marshall's trial counsel did preemptively object to Detective Embrey summarizing the evidence and because further objection was unnecessary because the detective appropriately testified about the facts of his investigation, the Nevada Supreme Court reasonably concluded that Marshall's trial counsel did not act deficiently.[110]  Marshall is denied federal habeas relief for Ground 4.[111]

---

[107] *See id.* at 105–110.

[108] *Abram v. State*, 95 Nev. 352, 355, 594 P.2d 1143, 1145 (1979).

[109] *See* ECF No. 14-33 at 101–110.

[110] *Strickland*, 466 U.S. at 690.

[111] Marshall asks the court to "[c]onduct an evidentiary hearing at which proof may be offered concerning the allegations in th[e] amended petition and any defenses that may be raised by Respondents."  ECF Nos. 11 at 24.  I have already determined that Marshall is not entitled to relief, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would affect my reasons for denying Marshall's amended petition.  Accordingly, I deny Marshall's request for an evidentiary hearing.

**C.     Certificate of Appealability**

The right to appeal from the district court's denial of a federal habeas petition requires a certificate of appealability.  To obtain that certificate, the petitioner must make a "substantial showing of the denial of a constitutional right."[112]  "Where a district court has rejected the constitutional claims on the merits," that showing "is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[113]  Because I have rejected Marshall's constitutional claims on their merits, and he has not shown that this assessment of these claims is debatable or wrong, I find that a certificate of appealability is unwarranted for this case and I decline to issue one.

**Conclusion**

IT IS THEREFORE ORDERED that the petition **[ECF No. 11] is DENIED**, and because reasonable jurists would not find my decision to deny this petition to be debatable or wrong, a **certificate of appealability is DENIED**.

The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

Dated: October 18, 2021

_____
U.S. District Judge Jennifer A. Dorsey

---

[112] 28 U.S.C. § 2253(c).

[113] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).